**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BLUE DOG AT 399 INC.,<br><br>                Debtor. | Chapter 11<br><br>Case No.: 15-10694 (MEW) |
| BLUE DOG AT 399 INC.,<br><br>                Plaintiff,<br><br>         -against-<br><br>BP 399 PARK AVENUE LLC,<br><br>                Defendant. | Adv. Proc. No.: 15-1097 (MEW) |

## OPINION DENYING MOTION TO DISMISS

**A P P E A R A N C E S :**

WOLLMUTH MAHER & DEUTSCH LLP
*Attorneys for Plaintiff Blue Dog at 399 Inc.*
500 Fifth Avenue
12th Floor
New York, NY 10110
By:    Paul R. DeFilippo
          John D. Giampolo

COZEN O'CONNOR
*Attorneys for Defendant BP 399 Park Avenue LLC*
277 Park Avenue
New York, NY 10172
By:    Frederick E. Schmidt

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is a motion to dismiss (the "**Motion to Dismiss**") filed by BP 399 Park Avenue LLC (the "**Landlord**") in the above-captioned adversary proceeding brought by Blue Dog at 399 Inc. (the "**Debtor**"). Among other things, the Landlord takes the position that this Court is

1

precluded from considering the claims raised in the Debtor's complaint (the "**Complaint**") under the doctrines of res judicata and collateral estoppel. The Landlord also takes the position that this Court lacks subject-matter jurisdiction over this adversary proceeding under the *Rooker-Feldman* doctrine and that the Complaint fails to state a claim for which relief may be granted. For the reasons set forth below, the Court denies the Motion to Dismiss and directs the parties to appear at a conference to discuss further proceedings.

## BACKGROUND

**A.    The Lease**

On January 1, 2012, the Debtor and the Landlord entered into a lease agreement (the "**Lease**") to allow the Debtor to operate a café in a portion of the Landlord's building at 399 Park Avenue in Manhattan (the "**Premises**"). (Compl. ¶ 10, ECF No. 1.) The Lease contained a provision mandating an outside opening date for the café of August 1, 2012 (the "**Opening Date**"). (Mot. to Dismiss ¶ 4, ECF No. 6.) After the Debtor allegedly defaulted on two rent payments and failed to open the café by the Opening Date, the Landlord sent the Debtor several notices of default and a notice of cancellation of the Lease. (Compl. ¶¶ 15, 17.)

**B.    The 2012 Stipulation and Other Extensions of Time**

On September 11, 2012, prior to the expiration of the cure and termination periods, the Debtor commenced litigation in the New York State Supreme Court (the "**State Court**") against the Landlord (Index No. 653158/2012) (the "**State-Court Action**"). (Compl. ¶ 18.) The Debtor also moved by order to show cause for a *Yellowstone* injunction against termination of the Lease. (*Id.*; Proposed Order to Show Cause, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. filed Sept. 11, 2012), NYSCEF No. 3.) The Debtor's motion, and "all other issues" arising out of the Landlord's prior notices, were resolved by the parties pursuant to a so-ordered stipulation dated November 27, 2012 (the "**2012 Stipulation**"). (Compl. ¶ 21;

2

Stipulation of Settlement, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. *so-ordered* Nov. 29, 2012), NYSCEF No. 76.)

The 2012 Stipulation stated that "[p]ursuant to the Three Day Notice, the validity of which was contested by [the Debtor], the Lease terminated as of September 13, 2012." (*Id.* at ¶ 4.) However, the parties agreed that if the Debtor satisfied all of the requirements in the 2012 Stipulation, including opening for business within the next 120 days (the last date of such period being the "**Amended Opening Date**"), the Lease would automatically be reinstated, and the prior notices of default and termination would be withdrawn. (*Id.*) In the interim the parties acknowledged that "the terms and conditions of the expired Lease are (and shall continue to be) binding." (*Id.* at ¶¶ 5–6). The Debtor also consented to the entry of a judgment of possession and a writ of assistance as to the Premises (the "**Judgment and Writ**"), the execution of which was stayed pending the Debtor's compliance with the 2012 Stipulation. (*Id.* at ¶¶ 7–8; Order and Judgment, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. Nov. 29, 2012), NYSCEF No. 77.)

The parties thereafter agreed to many extensions of the Amended Opening Date. (Compl. ¶ 31; Mot. to Dismiss ¶¶ 10–15.) However, by early 2015, the Debtor still had not opened for business. (Compl. ¶ 32.) The Landlord then began the eviction process pursuant to the previously issued Judgement and Writ, having the New York City Sheriff serve the Debtor with a notice of eviction in late January 2015. (Mot. to Dismiss ¶¶ 16–17.) On January 29, 2015, the Debtor filed another motion in the State-Court Action by order to show cause.[*] (Compl. ¶ 32; Proposed Order to Show Cause, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y.

---

[*] Neither party provided the Court with full copies of the papers related to the State-Court proceedings. However, the Court has retrieved these papers and takes judicial notice of them for purposes of the Motion to Dismiss.

3

Sup. Ct. filed Jan. 29, 2015), NYSCEF No. 79.) This motion asked the State Court: (1) to modify the 2012 Stipulation to grant a further extension of the Amended Opening Date; (2) to enjoin the eviction of the Debtor; and (3) to compel the Landlord to assist the Debtor in obtaining final Department of Building inspections and sign offs. (*Id.*) This motion resulted initially in a temporary restraining order against enforcement of the writ of eviction. (TRO, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. Jan. 30, 2015), NYSCEF No. 114.)

On February 2, 2015, the State Court so-ordered another stipulation that, among other things: (1) vacated the temporary restraining order and denied the eviction stay request and (2) directed the parties to meet and resolve their issues to ensure that the Debtor opened for business on or before February 28, 2015 (the "**2015 Stipulation**" and, together with the 2012 Stipulation, the "**Stipulations**"). (Stipulation, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. *so-ordered* Feb. 2, 2015), NYSCEF No. 115.) It appears that pursuant to the 2015 Stipulation, the agreed deadline for opening was extended to February 28, 2015 (the "**February 28, 2015 Deadline**"). (*Id.*; Compl. ¶ 33.)

C.    **The February 2015 Events**

The Debtor did not open for business by the February 28, 2015 Deadline. (Compl. ¶ 43.) The Debtor, however, alleges in the Complaint in this case that on February 28, 2015, the Debtor was "ready, willing and able to legally open for business" and "was only prevented from doing so by the failure and refusal of Landlord's representatives to attend the scheduled, final phase of the 'All Systems Test' that the Landlord required." (*Id.*) The Debtor claims the Landlord imposed the All Systems Test requirement and that this test would not otherwise be required pursuant to applicable law. (*Id.* at ¶¶ 34, 41.) Moreover, the Debtor claims that the Landlord imposed the time restriction for the All Systems Test as well, requiring it to be performed after 6:00 PM. (*Id.*

4

at ¶ 40.) According to the Debtor, on February 27, 2015, the first phase of the All Systems Test was conducted and successfully completed, and the second and final phase was to be performed thereafter on the same day. (*Id*. at ¶ 40.) However, the Debtor contends that the only reason the second and final phase of the All Systems Test was not completed was because the Landlord's representatives, whose attendance was required by the Landlord, left the Premises at approximately 4:45 PM, advising that they would return in time for the after 6:00 PM half of the test, and then refused to return for the test. (*Id*. at ¶¶ 40, 42.) As a result, the Debtor claims that it was unable to open for business the next day by the February 28, 2015 Deadline to fulfill the Stipulations' condition precedent to reinstatement of the Lease. (*Id*. at ¶ 43.)

In short, the Debtor contends in the Complaint that the Landlord caused the failure to open and therefore is responsible for any failure by the Debtor to comply with the opening date condition in the Stipulations to reinstatement of the Lease.

**D.    The March 3, 2015 Proceedings in the State-Court Action**

The State Court held a further hearing on March 3, 2015, after the February 28 deadline had passed. (Transcript of Mar. 3 Hearing, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. *argued* Mar. 3, 2015), NYSCEF No. 179 [hereinafter "Mar. 3 Hearing"].) Prior to this hearing, the Landlord submitted an affirmation in which it: (1) requested that the State Court deny the Debtor any further temporary restraining orders which would stay its impending eviction; (2) requested that the State Court "unconditionally vacate any and all stays;" and (3) argued for enforcement of the "Stipulation, Order, and Judgment" to allow the Landlord "to retake possession of the Premises." (Supplement Affirmation in Opposition to Plaintiff's Order to Show Cause at ¶¶ 2, 6, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. filed Mar. 2, 2015), NYSCEF No. 127.) In response, prior to the hearing, the Debtor filed an affidavit that: (1) requested that the State Court modify the Stipulations

5

and further extend the opening date and (2) argued that the State Court had the equitable power to stay the eviction in order to prevent a forfeiture of the Lease. (Sur Reply Affidavit at ¶ 12, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. filed Mar. 3, 2015), NYSCEF No. 139.)

At the March 3 hearing, the State Court rejected the contention that the Court could alter the terms of the parties' prior Stipulations (which was the relief the Debtor had requested), and in that context was not willing to entertain arguments as to the reason why the opening condition had not been met:

> THE COURT: Excuse me, I am not changing the stip.

(*Id*. at 7:24.)

> THE COURT: I have given her more and more and more time. Time has ended. Either get [the Landlord to] . . . agree to let her open, or don't, but don't come here and ask me to change the stip.

(*Id*. at 8:9–8:12.)

> THE COURT: I am not changing the stip.

(*Id*. at 8:14.)

In response to the Debtor's argument that the Landlord was, in fact, responsible for the Debtor's failure to open for business by the February 28, 2015 Deadline, the State Court treated that issue as irrelevant to the proceedings that were then before it, and suggested that it should be dealt with in another lawsuit:

> THE COURT: Then sue them. Sue them because they're evicting you.

(*Id*. at 7:19–7:20.)

Subsequently, the State Court entered an order denying the motion "in its entirety for the reasons stated on the March 3, 2015 record." (Decision & Order On Motion, *Blue Dog at 399 Inc.*

6

*v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. Mar. 11, 2015), NYSCEF No. 179.)  That order identifies the motion as one to "modify stipulation."  (*Id*.)

**E.     The Motion for Reargument in the State-Court Action**

On March 10, 2015, the Debtor filed a motion requesting (1) "re-argument of the decision/order . . . on the record dated March 3, 2015" and (2) injunctive relief compelling the Landlord "to attend the final inspection and upon passing permit the Plaintiff [Debtor] to open for business at the subject premises."  (Proposed Order to Show Cause, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. filed Mar. 10, 2015), NYSCEF No. 152.)  The State Court held a hearing on this motion the same day.  (Transcript of Mar. 10 Hearing, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. *argued* Mar. 10, 2015), NYSCEF No. 183 [hereinafter "Mar. 10 Hearing"].)

At the hearing, the State Court stated that it would not change its prior order:

> THE COURT:  . . . Really, the net result of the whole thing is not that I am changing my order, okay. . . .

(*Id*. at 8:11–8:16.)  Again, the State Court indicated that the only issue before it was whether it had the power to modify the Stipulations to further extend the opening date past the February 28, 2015 Deadline:

> THE COURT: I mean I can't change the stipulation, nor am I about to . . . .

(*Id*. at 3:5–3:6.)

> THE COURT: . . . I am bound by the stipulation that was entered . . . .

(*Id*. at 8:18–8:19.)

The State Court attempted to partake in a mediation of sorts to allow the parties to come to a resolution amongst themselves:

7

> THE COURT: Is there any way you [the Landlord] could enter into an agreement with Blue Dog at 399 Inc. [the Debtor] to work out some sort of an agreement . . . ?

(*Id*. at 3:11–3:13.)

> THE COURT: . . .The question is what should be or what can be a resolution to this matter, not what is the four corners of the box. What can be the resolution?

(*Id*. at 8:24–8:26.)

> THE COURT: . . . [T]his is what I think, like everything else, sometimes a good compromise or good something, a willingness to look at the box that may be in [a] slightly different light might lead possibly to a resolution of this matter which will be to everybody's best interest in the end. . . .

(*Id*. at 16:7–16:12.) However, the State Court again refused to consider any arguments regarding claims or issues related to why the Debtor failed to open for business by the February 28, 2015 Deadline:

> THE COURT: . . . [The opening] didn't happen in a timely fashion. Don't ask me why, I don't know why. I am sure that Mr. Sperber [the Debtor's counsel] could tell me good reasons why, but it doesn't matter.

(*Id*. at 8:20–8:23.)

> THE COURT: . . . Truth is that even if I found total illegality . . . . It's not going to work. It's just not going to work.

(*Id*. at 25:20–25:23.)

The order disposing of this motion indicated that it was a motion for "leave to reargue" and that "the Court declined to sign Plaintiff's Order to Show Cause seeking leave to reargue to Court's March 3, 2015 decision for the reasons stated on the March 10, 2015 record." (Decision & Order on Motion, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. Mar. 20, 2015), NYSCEF No. 182.) The order noted that the motion had been "disposed" but that it was not "granted," "denied," or "granted in part," but rather, "other." (*Id*.)

8

**F.      The Bankruptcy Case**

There were no further proceedings in the State-Court Action, although the action was never closed. The Debtor filed a petition for chapter 11 bankruptcy relief in this Court on March 24, 2015 and commenced this adversary proceeding against the Landlord by filing the Complaint on April 17, 2015. The Complaint includes four claims for relief: (1) a declaratory judgment declaring and adjudging that the Lease is in full force and effect, that the Debtor is the tenant thereunder, and that the Debtor should have rightful possession of the Premises thereunder; (2) damages for wrongful eviction; (3) preliminary and permanent injunctions restoring the Debtor to rightful possession and occupancy of the Premises pursuant to the Lease; and (4) damages for breaches of the Lease and the Stipulations and of implied covenants of good faith and fair dealing.

On June 19, 2015, the Landlord filed the Motion to Dismiss the Debtor's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), as made applicable by Federal Rule of Bankruptcy Procedure Rule 7012(b). The Landlord argues that this Court is precluded from adjudicating this matter pursuant to the doctrines of res judicata and collateral estoppel due to the previous litigation in the State-Court Action. The Landlord further argues that this Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Lastly, the Landlord argues that the Complaint fails to state a claim for which relief may be granted.

## DISCUSSION

Generally res judicata and collateral estoppel are affirmative defenses to be pleaded in the defendant's answer. *See* Fed. R. Civ. P. 8(c). However, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense[s] may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (citing *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, 186 F.2d 236, 237 (2d Cir. 1951)).

In this case, the res judicata and collateral estoppel issues cannot be decided except by first analyzing the claims asserted in the Complaint, and then comparing them to the claims made and decided in the State-Court Action.

**I.     Claims Asserted in This Court**

Claims one, two, and four of the Complaint seek relief on the ground that the Landlord prevented the Debtor from fulfilling the opening date condition set forth in the parties' Stipulations. These allegations must be accepted as true for purposes of the Motion to Dismiss, and they state a valid claim for relief under well-recognized principles of New York law.

"The general rule is, as it has been frequently stated, that a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of N.Y.*, 268 N.E.2d 782, 784 (N.Y. 1971); *see also* Restatement (Second) of Contracts § 245 (Am. Law Inst. 1981). This rule operates as "an *implied* contractual obligation, similar to—and perhaps rooted in—the implied covenant of good faith and fair dealing." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524 (2d Cir. 2005). The Restatement (Second) of Contracts explains it thus:

> "Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him . . . may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence. . . . [N]on-performance of that duty when performance is due is a breach [and] . . . it has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence."

Restatement (Second) of Contracts § 245 cmt. a (Am. Law Inst. 1981).

The *Kooleraire* case is illustrative. There, the plaintiff's contract with the New York City Board of Education was conditioned upon the plaintiff obtaining the Board's comptroller's

10

indorsement certifying that there was an unexpended amount of sufficient funds to pay the contract. *Kooleraire*, 268 N.E.2d at 783. Although there were such funds available and sufficient for the contract, the Board of Education directed the comptroller to withhold the necessary indorsement. The Board then relied on the failure to obtain the indorsement as a defense to the contract and as justification for a rescission of the contract. *Id*. The Court of Appeals of New York held that because the contract did not evidence an intent of the parties for the comptroller to have a veto of the contract pursuant to its indorsement authority, the Board's comptroller had a duty to oblige a request for the indorsement where such funds did in fact exist. *Id*. at 784. Moreover, because the Board of Education was responsible for the failure of that indorsement, the Board could not use the lack of indorsement as a defense to its obligations under the contract. *Id*.

The principle that was validated in *Kooleraire* and in the Restatement is sometimes referred to as the "Prevention Doctrine." When the Prevention Doctrine applies (when a defendant prevents a plaintiff from fulfilling a contractual condition), and when a plaintiff shows that it was otherwise "ready, willing and able to fulfill its contractual obligations," the contract remains enforceable and the plaintiff is entitled to the remedy of specific performance of the contract, notwithstanding the failure of the condition. *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513, 517 (N.Y. 2006); *see also Clarke v. Rodriguez*, 945 N.E.2d 1027, 1027–28 (N.Y. 2011) (upholding remedy of specific performance where the trial court found that the defendant frustrated the plaintiff's efforts to perform the contract). In *ADC Orange*, for example, a land sale contract required that the buyer obtain certain construction plan approvals by a certain date. 857 N.E.2d at 514. After a break-down in negotiations during the construction plan process, the seller declared the buyer in default, and the buyer brought suit for specific performance of the contract. *Id*. at 515. The seller defended the suit by alleging, among other things, that the contract had terminated when the buyer

11

failed to obtain the required approvals by the stated date. *Id.* In response, the buyer asserted that it had been "ready, willing and able to fulfill its contractual obligations" and that the seller had frustrated its ability to obtain the necessary approvals. *Id.* at 517. The Court of Appeals of New York held that if it were shown that the seller was to blame for the failure to meet the approval deadline, the buyer would be entitled to specific performance. *Id.*

Notably, the Prevention Doctrine does not amount to an amendment of a contract. Instead, it is akin to an estoppel, though not identified as such in the case law. A party who frustrates the performance of a condition cannot rely upon the failure to satisfy the condition as a defense to a contract or as a ground to terminate a contract. Instead, the contract remains in place, and the party who prevented the performance of the condition is barred from asserting the failure of condition as a breach or as a ground for termination.

Accordingly, the Debtor has stated claims for which relief may be granted if the facts are as the Debtor alleges. The Stipulations' requirement that the Debtor open for business by a certain date was a condition precedent to reinstatement of the Lease. The Landlord had a duty of good faith and fair dealing not to "hinder the occurrence" of that condition. If, as the Debtor alleges, the Landlord is responsible for the failure of the condition, the Landlord breached its duty of good faith and fair dealing by causing that failure. Moreover, if the Landlord is responsible, the condition of opening on time became excused and the Debtor was entitled to performance by the Landlord, i.e., to reinstatement of the Lease. The Landlord's failure to reinstate the Lease, then, would be a further breach of the Stipulations. Finally, if, as the Debtor claims, the Debtor was otherwise ready, willing, and able to open for business on time in satisfaction of the Stipulations by the February 28, 2015 Deadline, it would be entitled to specific performance of the terms of the Stipulations, including the reinstatement of the Lease.

The Landlord argues in its Motion to Dismiss that "there is no legal authority or support" for the Debtor's claims because "bankruptcy courts do not have the power to reinstate a lease terminated prior to the filing of a bankruptcy petition, and, *a fortiori*, when an eviction has been effectuated." (Mot. to Dismiss ¶¶ 60–61.) It is true that a bankruptcy court has no general equitable authority to undue a termination and proper eviction that has already been validly completed and that is enforceable under state law. The whole point of the case law cited above, however, is that the Lease did *not* terminate under state law, and the purported termination and service of the warrant of eviction were in wrongful breach of the Stipulations and of no effect, if the allegations of the Complaint are true. If the Debtor proves the facts alleged in the Complaint, then as a matter of New York law (not federal bankruptcy law) the Debtor would be entitled to specific performance of the Stipulations and to reinstatement of the Lease. *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513, 517 (N.Y. 2006); *see also Clarke v. Rodriguez*, 945 N.E.2d 1027, 1027–28 (N.Y. 2011).

## II.     The Res Judicata Defense

The Landlord argues that "all of the issues set forth in the Complaint were previously litigated in State Court," and, as such, the Debtor is precluded by res judicata from relitigating those issues before this Court. (Mot. to Dismiss ¶ 36.) The Landlord further argues that "[e]ven if one or more of the issues was not litigated in State Court, those issues *could have been* litigated in the State-Court Action," so that res judicata still bars the claims in the Complaint. (*Id*. at ¶ 36 n.5.)

Bankruptcy courts apply the preclusion law of the state in which they sit. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005) ("The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give.") (citations omitted). Under the doctrine of

13

res judicata, as applied in New York, parties to a litigation and those in privity with them are conclusively bound by a final judgment on the merits by a court of competent jurisdiction regarding issues of fact and questions of law necessarily decided therein. *Zimmerman v. Tower Ins. Co. of New York*, 13 A.D.3d 137, 139 (N.Y. 2004). Moreover, it is often noted that res judicata bars the relitigation of issues that were or could have been raised in the prior action. However, it is more accurate to characterize res judicata as barring the relitigation of *claims* or *causes of action* that were or could have been raised in the prior action. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 n.7 (2d Cir. 2003) (noting that the typical formulation of the doctrine of res judicata in the Second Circuit refers to "issues" that were or could have been raised in the prior action, but that this potentially confuses res judicata with collateral estoppel, and therefore reference to "claims" or "causes of action" is more appropriate).

The first point in the State-Court Action at which the Debtor could have raised the claims raised in this Complaint was after the Landlord allegedly caused the Debtor's failure to meet the February 28, 2015 Deadline. Those events occurred only a few days prior to the March 3, 2015 hearing in the State Court. The pleadings were not amended to set forth the claims that are now set forth in the Complaint in this Court. Instead, the motions by the Debtor in the State-Court Action sought *modification* of the parties' Stipulations and associated stays of eviction and injunctions pending the requested modifications.

In addition, the State Court did not mention or purport to rule upon the claims that are asserted in the Complaint in this Court. Although the Debtor did submit affidavits asserting several arguments that are related to those it makes in this case (and blamed the Landlord for the Debtor's failure to open), it appears from the record that the State Court treated the Debtor's application solely as a request that the Court modify the parties' Stipulations. At several points the State Court

14

indicated that it would not (or thought that it could not) consider other arguments as to the circumstances that led to the failure of the opening condition.

Most importantly, the March 3, 2015 hearing in the State Court was only a hearing to consider a request for interim relief (the request that the Court modify the parties' stipulation or enjoin the enforcement of the warrant of eviction). It is "[o]rdinarily" the case that "findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial." *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F.Supp.2d 226, 229 (S.D.N.Y. 2000) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

The Landlord argues in this Court that all of the Debtor's motions after the initial *Yellowstone* motion in the State-Court Action were not applications for preliminary relief. (Def.'s Reply ¶ 35.) However, the Landlord's present arguments are at odds with the position that the Landlord took in the State-Court Action. In its response to the Debtor's final motion for a rehearing in the State-Court Action, filed in March 2015, the Landlord contended that the Debtor was not entitled to reargue its case because the Debtor had merely sought a "temporary restraining order"—a "preliminary injunction"—and no formal or final order had been entered. (Affirmation in Opposition to Plaintiff's Order to Show Cause, at 9, *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Index No. 653158/2012 (N.Y. Sup. Ct. filed Mar. 10, 2015), NYSCEF No. 173.) The Landlord also asserted that "[i]f Plaintiff [the Debtor] feels that it has been wronged, it should do as this Court said and 'sue them' in the proper forum if it feels its claims are meritorious. . . . Either way, this Court is simply without jurisdiction to grant Plaintiff any recourse." (*Id.*)

The Landlord itself, therefore, acknowledged in the State-Court proceeding that the State Court's adjudication involved only preliminary relief, and did not bar claims of the type presented

15

in the current Complaint. Indeed, the State-Court judge stated on the record that her ruling was not a final determination of central issues and that the Debtor should sue the Landlord if the Debtor felt the eviction were wrongful. (Mar. 3 Hearing, at 7:19–7:20.)

It is true that "in limited situations, a decision on a motion for preliminary injunction may be deemed sufficiently final to have preclusive effect depending 'upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.'" *Id*. (citing *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961); *Don King Prods., Inc. v. Douglas*, 742 F.Supp. 741, 754–55 (S.D.N.Y. 1990), *on reargument*, 742 F.Supp. 786 (S.D.N.Y. 1990)). However, there is no basis for applying such an exception here. The State Court rulings occurred in the context of a request for emergency relief; the hearing occurred only a few days after the relevant events took place; no evidence was taken; and there was no discussion (or ruling upon) the legal claims that the Debtor currently makes.

In effect, the Landlord asks this Court to hold that the Debtor is barred from making the claims asserted in the Complaint because the Debtor could have sought preliminary relief on that same theory during the few days that passed after February 28, 2015 and before the March 3, 2015 hearing in the State Court. In this regard, it must be noted that the Debtor did not need to obtain a stay or an injunction at all, or to seek any form of preliminary relief in early March 2015, in order to preserve the right to make the contractual claims that the Debtor presently asserts. If the Debtor proves its present claims, then under the New York authorities cited above the Debtor will be entitled to specific enforcement and to a reinstatement of the Lease, notwithstanding the absence of a prior stay. In that event, the Landlord's purported termination of the Lease and service of the warrant of eviction would be treated as breaches of the Landlord's obligations and would be

16

disregarded. Since preliminary relief was not a prerequisite to the current claims, it would be wholly inappropriate to treat the State Court's refusal to grant an injunction as though it gave rise to a binding adjudication on the merits that forecloses any further consideration of the Debtor's claims.

### III.    The Collateral Estoppel Defense

The doctrine of collateral estoppel precludes parties from relitigating an issue when: (1) the identical issue was necessarily decided in the prior proceeding and is decisive of the present action; and (2) there was a full and fair opportunity to contest that issue in the prior proceeding. *Zimmerman*, 13 A.D.3d at 139. Pursuant to the first prong of this test, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein." *Ryan v. N.Y. Telephone Co.*, 467 N.E.2d 487, 490 (N.Y. 1984).

The Landlord argues that the Debtor had a "full and fair opportunity to contest the issues" raised in the Complaint and that "it actually litigated those issues" in the State-Court Action. (Mot. to Dismiss ¶ 44.) As such, the Landlord asserts that the entirety of the Complaint must be dismissed as barred by collateral estoppel. (*Id.* at ¶ 45).

The Landlord correctly asserts that the facts pleaded by the Debtor in its Complaint were, to some extent, relied on by the Debtor in the State-Court Action. However, they were raised there in the context of a request for modification of the Stipulations. The State Court did not decide the factual issues at that time, but instead ruled (at a preliminary hearing) that it could not amend the parties' contract based on the allegations that had been made.

As discussed above, the claims in front of this Court rely upon the applicability of the Prevention Doctrine. The applicability of that doctrine turns on the issue of whether the Landlord was materially responsible for the Debtor's failure to open for business by the February 28, 2015 Deadline. Moreover, the Debtor's claim for specific performance turns on the issue of whether

the Debtor was otherwise ready, willing, and able to open for business by the February 28, 2015 Deadline.  The State Court did not "necessarily decide" (or even consider) either of these issues.  No evidence was taken and no findings were made as to the reasons for the failure to meet the opening date condition.  The State Court instead ruled that, for purposes of the proceedings on March 3, 2015, the reason for the failure to open "doesn't matter."  (Mar. 10 Hearing, at 8:22–8:23.)  The State Court focused entirely on the request for modification of the Stipulations: "I am not changing the stip" (Mar. 3 Hearing, at 7:24); "don't come here and ask me to change the stip" (*Id*. at 8:11–8:12); "I am not changing the stip" (*Id*. at 8:14); "I am bound by the stipulation that was entered, and by the law that I have to enforce."  (Mar. 10 Hearing, at 8:18–8:20.)  As to the other issues and claims for relief, the State Court left those for another day.

**IV.    The *Rooker-Feldman* Arguments**

The Landlord also contends that this Complaint is barred by the *Rooker-Feldman* doctrine.  (Mot. to Dismiss ¶ 46.)  The *Rooker-Feldman* doctrine denies federal courts, other than the United States Supreme Court, subject-matter jurisdiction to reverse or modify a state-court judgment.  *Exxon Mobil v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283–84 (2005); *see also* 28 U.S.C. § 1257.  The doctrine precludes "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments."  *Exxon Mobil*, 544 U.S. at 284.  The doctrine occupies a "narrow ground," however, and the Supreme Court has emphasized that the circuits have previously misconstrued it "to extend far beyond [its original] contours" and consequently "erred in ordering federal action dismissed for lack of subject-matter jurisdiction."  *Id*. at 284.

In the Second Circuit, there are four requirements that must be met before the *Rooker-Feldman* doctrine applies: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite

18

district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the federal court proceedings commenced. *Green v. Mattingly*, 585 F.3d 97, 101 (2009) (citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)). Moreover, the *Rooker-Feldman* doctrine does not apply where the federal court is reviewing temporary orders of the state court and no "final state-court judgment" has been rendered. *See id*.

*Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 293. For example, "if a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (quotations omitted). Instead, the "applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on *the causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). Thus, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior to the state-court proceedings, and so could not have been 'caused by' those proceedings." *Id*. at 98.

Here, the Debtor does not complain of an injury caused by a judgment issued by the State Court. Instead, the Debtor challenges the Landlord's contractual right to terminate the Lease and to serve a warrant of eviction. The State Court declined to enjoin action by the Landlord, but did not decide the contractual issues raised in the Complaint. The claims asserted in this Court do not ask this Court to overturn any prior judgment or determination of the State Court, but instead ask

19

this Court to determine the effect of the Landlord's alleged obstruction of the Debtor's ability to comply with a contractual condition in a series of Stipulations.

While the *Rooker-Feldman* doctrine does not apply, however, the Court nevertheless is concerned over the continued pendency of the State Court Action. Considerable proceedings were held in the State Court. If that Court continues to have jurisdiction over the matter then that Court may be best situated to resolve the parties' remaining issues. On the other hand, it appears that the Landlord previously contested the jurisdiction of the New York Supreme Court, which may mean that the Debtor's claims need to proceed in a different court in any event. The Debtor and the Landlord therefore will be directed to appear at a further conference to discuss the extent to which the claims asserted in the Complaint could or should be asserted in the pending State Court Action and whether this Court should abstain from considering the claims.

## CONCLUSION

For the reasons set forth above the motion to dismiss is denied. The parties are directed to appear at a further conference on a date to be set by this Court to discuss the matters identified above. Other proceedings in this adversary proceeding are stayed pending the completion of that conference.

Dated: New York, New York
October 27, 2015

                                             **s/Michael E. Wiles**
                                             Michael E. Wiles
                                             United States Bankruptcy Judge